# Nicolette Lumber Company, Appellant, v. Peoples Coal Company.

*Bailment—Definition—Classification—Lien—Carriers—Warehousemen.*

A bailment is a delivery of personal property in trust. The character of the trust may be as broad as its duties require ; yet, speaking generally, all deliveries of personal property to another in trust for a lawful purpose are bailments. Classifications have sprung from the nature of the trusts rather than from any inherent principle of distinction. The duties of the bailee have served as designations, by which they are most commonly known. Thus we have warehousemen, common carriers, innkeepers, mechanics, tradesmen, etc.; but the underlying principle of a bailment is the delivery of personal property in trust for a certain purpose.

A common carrier is one whose business it is to carry chattels for all persons who may choose to employ and remunerate him; and this applies to carriers by land and water, without regard to distance or motive power. The duties and responsibilities of a common carrier are to faithfully perform the undertaking, without regard to his qualifications, and he may limit his common-law liability by contract except for his torts or gross negligence. In the absence of a stipulation, therefore, he is entitled to be paid what the particular services are worth and as security for this the law gives him a lien on the property bailed, while in his possession.

Generally speaking one who receives the property of another, to do something to it or about it, or transport it, or care for it, has a lien upon it for the particular service rendered in relation to it, while the property is in his possession.

Where an owner of barges holds himself out as ready to carry anything his barges are suited for, for all persons, at a profit, he is a common carrier, and if the barges are detained by low water, and their cargoes have to be cared for, the owner of the barges is in the position of a warehouseman ; but whether as carrier or warehouseman, he has a lien for his charges.

Argued April 14, 1904. Appeal, No. 106, April T., 1904, by plaintiff, from judgment of C. P., No. 2, Allegheny Co., Oct. T., 1901, No. 832, on verdict for defendant in case of Nicolette Lumber Company v. Peoples Coal Company. Before

RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Replevin for cargoes of lumber. Before FRAZER, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for defendant for $523.40. Plaintiff appealed.

*Error assigned* was in refusing binding instructions for plain-tiff.

*William M. Hall, Jr.*, with him *Watson B. Adair*, for appellant.—There is no such thing known to the law as a lien for demurrage or use of the barges under the facts in this case : Grove v. Barclay, 106 Pa. 155; Chicago, etc., Ry. Co. v. Jenkins, 103 Ill. 588; Fuller v. Bradley, 25 Pa. 120.

*Henry A. Davis*, for appellee.

OPINION BY SMITH, J., November 21, 1904 :

The plaintiff, having contracted to sell lumber to Sloane, McIlvaine and Graham, of Pittsburg, loaded it on two barges owned by the defendant. The barges, thus loaded, were received by the defendant at Parkersburg, West Virginia, under an agreement to tow them up the Ohio river to Pittsburg. There they were to be received by the purchasers and by them transported up the Allegheny river to Springdale. The defendant was fully informed of this destination of the lumber, and agreed to notify the consignees immediately upon its arrival at Pittsburg. On June 9, 1901, the barges reached the defendant's landing at Pittsburg. The Allegheny was then falling, but there was still sufficient water to enable the barges to reach Springdale. Later, the water became too low to permit this, and so remained until about August 26, the lumber meantime remaining on board. On that day the consignees demanded the lumber, but the defendant refused to deliver it without payment for the detention of the barges, and for the care of the barges and lumber. Payment was not made, and the lumber remained in the barges until taken by the plaintiff on the writ of replevin by which this action was commenced.

Thus far, the parties are agreed as to the facts. The plaintiff, however, alleges that the defendant failed to give the consignees notice of the arrival of the lumber in time for them to forward the barges to Springdale previous to June 12, and that the water, on that day, had become too low for that purpose. Both allegations are denied by the defendant.

The questions relating to notice, and to the stage of the water, were properly disposed of by the trial judge, and so far as these affect the rights of the parties the appellant has no valid ground of complaint. Whether the notice was reasonably prompt, depended on circumstances of such a character that there could be no fixed standard by which the question might be determined. The stage of water required for the movement of the barges, with the facts relative to its existence, were matters to be shown by the testimony of witnesses acquainted with the navigation of the stream, and could not be decided by the court. But these questions were for the jury, and were submitted with adequate instructions.

That a bailment exists here must be admitted; but appellant contends that the facts of this case do not bring it within any of the established classes of bailment, known to the law of this state, and therefore argues, inferentially, that the duties and liabilities arising from the contractual relation here cannot be enforced on the ground of a lien by the bailee, in the absence of a special agreement therefor. A bailment is a delivery of personal property in trust. Blackstone says that " a bailment is a delivery of goods in trust, upon a contract expressed or implied, that the trust shall be faithfully executed on the part of the bailee." This is substantially the definition given by other writers on the subject. The character of the trust may be as broad as its duties require; yet, speaking generally, all deliveries of personal property in trust for a lawful purpose are bailments. Classifications have sprung from the nature of the trusts rather than from any inherent principle of distinction. The duties of the bailee have served as designations, by which they are most commonly known. Thus we have warehousemen, common carriers, innkeepers, mechanics, tradesmen, etc.; but the underlying principle of a bailment is the delivery of personal property in trust for a certain purpose. A common carrier is one whose business it is to carry chattels

for all persons who may choose to employ and remunerate him; and this applies to carriers by land and water, without regard to distance or motive power. The duties and responsibilities of a common carrier are to faithfully perform the undertaking, without regard to his qualifications, and he may limit his common-law liability by contract, except for his torts or gross negligence. In the absence of a stipulation therefor he is entitled to be paid what the particular services are worth and as security for this the law gives him a lien on the property bailed, while in his possession. Generally speaking one who receives the property of another, to do something to it or about it, or transport it, or care for it, has a lien upon it for the particular service rendered in relation to it, while the property is in his possession. This doctrine is sustained by the text-books and the leading cases on the subject.

Under the evidence it is clear that the defendant's undertaking was that of a common carrier. It held itself "ready to carry anything its barges were suited for," for all persons, at a profit. The subsequent claim for the care of the lumber and use of the barges, arising from their detention, after a reasonable time allowed for the discharge of the freight, is analogous to the service of a warehouseman. It is immaterial whether this service was rendered as a carrier or as warehouseman. The lien arose from the bailment without reference to its particular classification. For service, as either, the law gives a lien on the property bailed, and its reasonable value was for the jury. As all the evidence respecting the matter in controversy was heard and passed upon by the jury, the verdict is conclusive. The charter powers of the defendant are not raised by the record.

Judgment affirmed.

ORLADY, PORTER and HENDERSON, JJ., dissent.